## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DEBORAH O.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 20-2221-JWL** |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614; Title II and Title XVI respectively; of the Social Security Act; 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act); through December 31, 2017, and finding her disabled within the meaning of Title XVI, 42 U.S.C. § 1382c(a)(3)(A), beginning January 1, 2018.  (R. 25). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

I.     **Background**

Plaintiff protectively filed applications for DIB and SSI benefits on June 5, 2017.

(R. 13).  After exhausting administrative remedies before the Social Security

Administration (SSA), Plaintiff filed this case seeking judicial review of the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred

at step two by failing to find her immune deficiency, hip pain, avascular necrosis, and

cervical spondylosis with radiculopathy severe before January 1, 2018; and that the

residual functional capacity (RFC) assessed for the period from June 8, 2016 through

December 31, 2017 was faulty.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to

the weight, not the amount, of the evidence.  It requires more than a scintilla, but less

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged both in the order they are reached in applying the sequential evaluation process and in the order presented by Plaintiff.

## II.    Step Two Evaluation

Plaintiff claims error because "the ALJ failed to find [her] Common Vascular Immune Deficiency; Hip Pain and Bilateral Avascular Necrosis; and Cervical Spondylosis with Radiculopathy severe prior to December 31, 2017." (Pl. Br. 10). First, she argues, "The record is replete with references concerning [her] common immune deficiency disorder," that she has had disabling limitations from this disease and its

4

treatment since her alleged onset date, and that it has "colored the type of treatment she was able to receive from her neurosurgeon." Id. at 10-11 (citing R. 464, 467).

Plaintiff suggests that her history of low back pain and bilateral hip pain before December 31, 2017 is connected to her avascular necrosis sufficiently to find avascular necrosis was a severe impairment before January 1, 2018 and therefore disabling before that date. (Pl. Br. 11). She points out that an MRI in January 2018[2] showed avascular necrosis, but low back pain and bilateral hip pain was present as early as August 2016 and was increasing. Id. She argues, "The record clearly establishes that [Plaintiff]'s immune deficiency and hip impairments had more than a minimal effect on her ability to perform basic work activities back to her alleged onset date." Id. at 12.

The Commissioner argues Plaintiff's immune deficiency was not severe because she worked in the past despite having this disorder and despite having taken infusions for it. (Comm'r Br. 6). He argues the ALJ noted Plaintiff had successfully worked jobs which require interactions with others despite her immune deficiency. Id. at 6-7 (citing R. 17). He points out the ALJ's finding that the limitations alleged were not supported by or consistent with the record evidence and asserts that what colored her treatment was her own hesitance to undergo surgery because of her immune deficiency which the surgeon found understandable but nonetheless thought surgery was a good option. Id. at 8.

---

[2] The court notes that the Emergency Room records reveal an admission date of January 22 and a discharge date of January 23, 2018. Hereinafter, the court will consider the 22nd or the 23rd interchangeable when discussing these notes.

He argues "the ALJ reasonably determined that [avascular necrosis] was not a medically determinable impairment, let alone a "severe" impairment, prior to January 2018." Id. (citing R. 16).  He points out that avascular necrosis cannot be found a medically determinable impairment before 2018 because "the existence of an impairment cannot be established by a claimant's statements about her symptoms," and "prior to January 2018, Plaintiff's degenerative disc disease and associated hip symptoms did not cause more than a minimal limitation in her ability to do basic work activities."  (Comm'r Br. 8).  He points out that when Plaintiff was at the emergency room in January 2018, Plaintiff "reported groin pain and swelling, more prominent on the right.  She explicitly said she 'has never had pain quite like this ...'"  Id. at 9 (citing R. 536).

In her Reply brief Plaintiff argues that the ALJ misstated the treatment note by her rheumatologist in December 2017, that the record of the emergency room visit in January 2018 which led to her diagnosis of avascular necrosis reveals she had been having the groin pain for six weeks, back before her visit to her rheumatologist in December 2017, and that in April 2018 her orthopedic surgeon recorded "significant hip pain, right greater than left, that has worsened over the last year."  (Reply 2) (citing R. 507-10, 536, 646). Plaintiff argues the case relied upon by the Commissioner is distinguishable because the claimant there arguably had disabling limitations at least seven months after her date last insured for DIB and was seen by her physician with limitations which were not disabling six months before her date last insured.  Id. at 3 (citing Barker v. Astrue, 459 Fed. App'x 732 (10th Cir. 2012)).  She concludes, "The finding of disability January 1, 2018, ONE

DAY after the expiration of her insured status, is not supported by the substantial evidence of record." Id. (caps in original).

## A.    Step Two Standard

The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience.  Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003).  A claimant must provide medical evidence that she had an impairment and how severe it was during the time the claimant alleges she was disabled.  20 C.F.R. §§ 404.1512, 416.912.  A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [her] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. §§ 405.1529(b), 416.929(b).  A claimant's "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  [The SSA] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. §§ 405.1521, 416.921 ("Establishing that you have a medically determinable impairment(s)")

An impairment is not considered severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522, 416.922.  The

Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "<u>de minimis</u>" showing.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  <u>Williams</u>, 844 F.2d at 751.  However, she must show more than the mere presence of a condition or ailment. <u>Hinkle</u>, 132 F.3d at 1352 (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on a claimant's ability to do basic work activities, it could not prevent her from engaging in substantial work activity and will not be considered severe.  <u>Hinkle</u>, 132 F.3d at 1352.

Limitations attributed to impairments which are medically determinable but are not severe <u>must be</u> considered at later steps in the evaluation, but alleged limitations attributable to impairments which are <u>not</u> medically determinable <u>must not be</u> considered at later steps.  20 C.F.R. §§ 405.1523, 416.923 (explaining that the combined effect of all impairments, even those which are not severe, will be considered throughout the disability determination process), 405.1529(b), 416.929(b) (explaining that symptoms may only be considered when they reasonably result from a medically determinable impairment (hereinafter MDI)), 405.1545(a)(2), 416.945(a)(2) (explaining that when assessing RFC the Commissioner will consider all MDI, even those that are not severe); <u>see also</u>, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); <u>Gibbons v.</u>

Barnhart, 85 F. App'x 88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions attributable to medically determinable impairments.") (quotation omitted).

### B.      The ALJ's Findings Relevant to Issues at Step Two

The ALJ found, and Plaintiff does not dispute, that Plaintiff had "sufficient quarters of coverage to remain insured through December 31, 2017." (R. 14). He found Plaintiff had severe impairments of "degenerative disc disease of the lumbar spine, tendinosis of the right upper extremity, and chronic obstructive pulmonary disease (COPD)" from her alleged onset date, June 8, 2016, through the date of his decision, March 29, 2019. (R. 16) (finding no. 3) (bold omitted). He found that beginning on January 1, 2018, Plaintiff had additional severe impairments of "bilateral avascular necrosis of the hips status-post total hip arthroscopy on the right and new onset systemic lupus erythematosus/Raynaud's disease." Id. (finding no. 3) (bold omitted). He found Plaintiff had an MDI of an immune deficiency disorder and explained his finding:

> the claimant receives semi-weekly infusion treatments for her immune deficiency disorder, and she has alleged serious side effects from these infusions lasting up to three days (e.g., Ex. 7F/1, 7-8; hearing testimony). She also alleges that she does not spend any time with others or go anywhere on a regular basis because her immune system makes it too easy for her to catch a virus or an infection if she is out with people (Ex. 7E/5). However, the undersigned notes that the claimant's immune deficiency was reportedly diagnosed and [sic] 1990, yet she was able to engage in substantial gainful activity consistently from 2004 to at least 2012. Her primary occupation during that time, a unit secretary, would require a modicum of contact with others (Ex. 13D; 3F/34). Other than her subjective complaints, there is nothing to suggest that her condition has substantially worsened in the last few years. In fact, laboratory studies show normal to only minimally abnormal findings with regard to the claimant's immune markers (e.g., Ex. 6F/10-ll, 16). Her condition also did

not prevent her from working an average of 144 hours per month as a taxi driver from June 2016 to May 2017. Furthermore, while the claimant was prescribed antibiotics for reported respiratory or sinus infections, none of these acute illnesses required inpatient or emergency room treatment, and clinical findings do not document any serious functional deficits or abnormalities suggesting significant limitations (e.g., Ex. 2F/7; 3F/3; 4F/4). The undersigned also notes that, contrary to her allegations of frequent recurrent infections, in May 2018, the claimant reported that she had not been sick in a long time (Ex. 13F/4). Finally, treatment records do not document any reported side effects of the infusion treatments consistent with the claimant's allegations of being debilitated for up to three days following a treatment. Indeed, other than a vague report of flu-like symptoms in December 2017, treatment records generally do not document any significant complaints related to the infusions (e.g., Ex. 6F/3 versus 6F/4, 13). An impairment is found to be non-severe when medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability to perform basic work activities (20 CFR 404.1520(c), 404.1522, 416.920(c), 416.922; SSR 85-28). An impairment must also be expected to result in death, or either have lasted or be expected to last for at least 12 continuous months (20 CFR 404.1509, 416.909). Because the claimant's allegations regarding her alleged immune deficiency disorder are not well supported by the medical evidence of record, and the objective findings do not show more than mild abnormalities, the undersigned finds that this condition is non-severe.

(R. 17).

## C.   **Analysis**

With regard to Plaintiff's immune deficiency, as noted above the ALJ found it does not cause disabling symptoms and is not severe within the meaning of the Act as quoted above. The ALJ's explanation is supported by the record evidence and Plaintiff has not shown evidence that compels finding otherwise. To the extent Plaintiff relies on Dr. Passer's opinion, the ALJ noted that opinion was formulated on November 5, 2018, it was inconsistent with Plaintiff's conservative treatment and physical examinations before January 1, 2018, and did not refer to objective signs or findings supporting the limitations

before January 1, 2018.  (R. 23).  Therefore, he found the opinion was "only persuasive regarding the claimant's residual functional capacity beginning in January 2018."  Id. Plaintiff does not argue, much less demonstrate, error in this evaluation.  Plaintiff's argument that her immune deficiency affected the treatment she received from her neurosurgeon fares no better.  Dr. Clough found Plaintiff had "[c]hronic spondylitic pain secondary to degenerative disc disease at the L5-S1 level, with occasional cervical radiculopathy/pain from the C5-6 level," and thought "that she is a candidate for disc arthroplasty, and with her young age this would be a good option for her."  (R. 464).  He noted that Plaintiff was "hesitant to undergo any large operation with her immune deficiency and that is understandable."  Id.  As the Commissioner noted, it was Plaintiff's understandable hesitance that affected the treatment given, not the neurosurgeon's plan, because he thought it was a good option for her.  Moreover, even acknowledging that Plaintiff's understandable hesitance is a valid excuse to delay, or perhaps even forego, the suggested operation, the ALJ found both degenerative disc disease and immune deficiency are MDIs in this case and considered the limitations caused by them in assessing Plaintiff's RFC.

Plaintiff made the assertion that the ALJ erred in failing to find her cervical spondylosis with radiculopathy is a severe impairment in only one sentence in her Brief, and without any argument in support, and thereby effectively waived the issue.  Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived). Nonetheless, the court will briefly address it.  The ALJ specifically found degenerative disc disease of the lumbar spine is a severe impairment in this case. (R. 16).  However,

the ALJ considered and fully discussed degenerative disc disease both of the lumbar and of the <u>cervical spine</u>.  Regarding the cervical spine, he stated:  "In terms of her alleged back pain, imaging shows mild to moderate degenerative disc disease in the lumbar spine and moderate to severe degenerative disc disease cervical spine."  (R. 20) (citing R. 627-30).  He explained that "while the claimant may indeed have some back and <u>neck pain</u> due to degenerative disc disease, the clinical findings prior to January 1, 2018, are not consistent with her alleged limitations due to chronic pain, such as being unable to lift even six pounds or walk more than 15 feet."  (R. 21) (emphasis added).  He found the opinions of the state agency consultant physicians consistent with "the imaging showing degenerative disc disease in the cervical and lumbar spine" but he found their restriction to light work untenable but "a restriction to a range of sedentary work is more appropriate given the mild to moderate degenerative disc disease in the lumbar spine and moderate to severe degenerative disc disease cervical spine."  (R. 22).  He found "Dr. Byrne's opinion regarding the claimant's postural limitations is more consistent with the multilevel degenerative disc disease in the claimant's cervical and lumbar spines."  <u>Id.</u>  When considered in context, it is clear the ALJ found Plaintiff's degenerative disc disease is a severe impairment both in the lumbar and the cervical portion of her spine and accounted for them accordingly.

Plaintiff's attempt to connect her history of low back pain and hip pain before January 1, 2018 with her avascular necrosis diagnosed in January 2018, and thereby justify finding avascular necrosis as a severe impairment before January 1, 2018 also fails.  Plaintiff's Brief acknowledges that on August 2, 2016 Dr. Clough noted Plaintiff's

chronic low back pain and pain and cramps into her hips was "likely due to degenerative disc disease and spondylosis."  (Pl. Br. 11) (quoting R. 585).  Dr. Clough's opinion tends to detract from Plaintiff's attempt to tie the hip and back pain before 2018 with her hip pain from necrosis in 2018.

Plaintiff argues that her avascular necrosis could not have first begun when it was revealed by an MRI and diagnosed, on January 23, 2018.  She argues that the ALJ was required to consider the combined effects of her avascular necrosis and all of her other impairments before January 1, 2018 and, had he done so, he would have found the pain and limitations from her avascular necrosis when combined with her other limitations was disabling before January 1, 2018  (Pl. Br. 11).  She supports this argument in her Brief by pointing to "a several-week history of right hip and groin pain" reported when she went to the emergency room on January 23, 2018.  Id. (citing R. 541).  In her Reply Brief, she cites a report in the ER notes that her "groin pain had been present for six weeks," suggesting the avascular necrosis should relate back (and be disabling) into 2017.  (Reply 2) (citing R. 536).  As Plaintiff suggests, the ER records provide her "Chief Complaint" is "Groin Pain – R groin x six weeks."  (R. 536).  The "History of Present Illness" states "Patient states for last several weeks she has been getting worsening groin pain more prominent on the right. … She states she has never had pain quite like this in her right groin."  Id.  The record reveals "History provided by: Patient and friend."  (R. 537).

However, as the Commissioner points out, "As late as December 2017, Plaintiff denied joint swelling, muscle weakness, or limping."  (Comm'r Br. 9).  In the record of

treatment on December 28, 2017, Dr. Shah noted in the "History of Present Illness" that "for the past 2 years [Plaintiff] has noticed increased joint pain and fatigue," but that she "denies … joint pain, joint swelling, muscle weakness." (R. 507). He noted, "Full 12 point ROS [Review of Systems] reviewed and negative other than HPI [History of Present Illness]." Id. The record also reveals in a "Review of Systems" two sections for "MS" (musculoskeletal), one of which states: "MS  Positive  … Decreased mobility, Joint pain, Weakness," and the other states: "MS  Negative  … joint swelling, limping, low back pain, … muscle weakness." (R. 508). It is unusual to have two reviews of the musculoskeletal system in a single treatment note, especially when one is positive for decreased mobility, joint pain, and weakness, while the other is negative for joint swelling, limping, low back pain, and muscle weakness. Nevertheless, because the treatment note verifies that the Review of Systems was negative other than HPI, the History of Present Illness takes precedence and Plaintiff cannot show she had hip pain on December 28, 2017. Moreover, there is no suggestion in that treatment note of any groin pain. Further confirming this finding is Plaintiff's statement in the ER on January 22, 2018 that "she has never had pain quite like this in her right groin." (R. 536).

Plaintiff's (or her friend's) statement in the ER that she had been having increasing pain in her groin for six weeks, or for several weeks, does not change this result. An individual's (or a friend's) statement when she is clearly in pain (which she described as pain unlike she had had in her groin before) and a pain which had been increasing over time, is insufficient to overcome her contemporaneous statement almost four weeks earlier that she was experiencing no joint pain. Thus, Plaintiff has not shown

14

evidence that compels finding her avascular necrosis was a severe impairment before January 1, 2018.

As the Commissioner points out, the evidence does not even show that avascular necrosis was an MDI before January 1, 2018. Even if Plaintiff's symptoms might be seen to imply avascular necrosis as an MDI, that would not suffice because "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The SSA] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 405.1521, 416.921. Therefore, an MDI of avascular necrosis could not be established from this record until January 22, 2018 when Plaintiff's clinical signs and symptoms first suggested it and the MRI confirmed it. (R. 536-47).

## III.   Residual Functional Capacity June 8, 2016 Through December 31, 2017

Plaintiff argues the ALJ erred in assessing an RFC providing that prior to January 1, 2018 Plaintiff could "frequently [(up to 5.3 hours in an 8-hour workday)] reach in all directions with the right upper extremity." (Pl. Br. 14) (citing R. 19). She argues this is error because it "is not consistent with the substantial evidence of record," id. at 15, which demonstrates Raynaud's syndrome and right elbow tendinosis causing pain in her hands and making it difficult to use them. Id. at 14. She argues the records show ulnar impingement syndrome and lateral epicondylitis, and "Dr. Passer opined that she would be capable of rarely lifting less than 10 pounds and limited in handling and fingering to five-percent of an eight-hour workday." Id. (citing R. 398, 577, 732).

The Commissioner argues that substantial evidence supports the RFC assessed by the ALJ. (Comm'r Br. 12-13). He points out the ALJ found Dr. Passer's opinion not persuasive for the period before January 1, 2018, but persuasive thereafter. Id. at 13. He argues this finding is supported by substantial evidence. Id. at 16-17. He argues the evidence cited by Plaintiff does not reveal any "functional limitations in handling or fingering" other than Dr. Passer's unpersuasive opinion. Id. at 17.

In her Reply Brief, Plaintiff argues that the court "is tasked with determining whether the ALJ's factual findings are supported by the substantial evidence of record and whether the ALJ applied the correct legal standard." (Reply 3). She argues:

> the ALJ failed to give proper weight to the significant findings, treatments, and objective medical evidence supporting [Plaintiff]'s disabling pain and fatigue complaints prior to January 1, 2018. In addition, he disregarded the opinion of treating physician Dr. Passer as of the onset date, when no other medical opinion contradicted report. [sic] This can hardly be said to be relying on the substantial evidence of record. Consequently, the ALJ's decision is not supported and must be reversed.

Id. at 4.

## A.      Standard for Assessing RFC

The Commissioner has promulgated regulations regarding assessment of RFC. 20 C.F.R. §§ 404.1545-1546, 416.945-946. In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite her impairment(s). Id. at §§ 404.1545, 416.945. The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all the claimant's impairments, including impairments which are not "severe" as defined in the regulations. Id. at §§ 404.1545(a & e), 416.945(a & e). The assessment is to

16

consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments.  Id. §§ 404.1545(b,c,d), 416.945(b,c,d); see also §§ 404.1522, 416.922 (listing examples of basic work activities which may be affected by impairments).  At the ALJ hearing level, it is the ALJ's responsibility to assess RFC.  Id. §§ 404.1546(c), 416.946(c).

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2.  It is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect her ability to perform work related activities.  Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2012) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2020) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").  The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source

17

statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2020).

>    **B.**     **Analysis**

As a preliminary matter, the court notes there is no such thing as "the substantial evidence of record."  An administrative record might be seen to support "two inconsistent conclusions from the evidence."  <u>Lax</u>, 489 F.3d at 1084.  The court's duty is to determine whether <u>the ALJ's factual findings</u> are supported by substantial evidence in the record and whether he applied the correct legal standard.  <u>Id.</u>  As noted at the beginning of this opinion "substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Perales</u>, 402 U.S. at 401; <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett</u>, 862 F.2d at 804.  Since a record might reasonably support "two inconsistent conclusions;" <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966); it might be said that either conclusion is supported by substantial evidence in the record.  Thus, the question for the court is not what "the substantial evidence" shows, or whether Plaintiff has shown substantial record evidence in support of her view, but whether <u>the ALJ's factual findings</u> are supported by substantial evidence in the record.  If so, even though Plaintiff might provide a reasonable contrary conclusion also supported by substantial record evidence, the court must affirm the ALJ's decision. As the Supreme Court has explained, and as also noted early in this opinion, to overturn an agency's finding of fact the court "must find that the evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it."  <u>Elias-Zacarias</u>, 502 U.S. at 481, n.1 (emphases in

original).  Consequently, when Plaintiff argues the RFC assessed is erroneous because it "is not consistent with the substantial evidence of record" (Pl. Br. 15) or that the court "is tasked with determining whether the ALJ's factual findings are supported by the substantial evidence of record" (Reply 3), she is really suggesting that the <u>preponderance</u> of the evidence supports her position and the court should reweigh the evidence and substitute it judgment for that of the Commissioner.  However, as the court also noted early in this opinion, it "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], <u>even if the evidence preponderates</u> against the [Commissioner's] decision." <u>Bowling</u>, 36 F.3d at 434 (quoting <u>Harrell</u>, 862 F.2d at 475) (emphasis added).  The court does not hereby suggest that the evidence in this case preponderates in Plaintiff's favor but emphasizes the hurdle Plaintiff must overcome to prevail.

Plaintiff has not shown that the evidence—upon which she relies to demonstrate error in the ALJ's assessment of an ability before January 1, 2018 to reach frequently— compels a contrary finding.  The ALJ found Plaintiff was diagnosed with Raynaud's syndrome after January 1, 2018, and that finding is supported by the record evidence. The mere presence of impairments such as ulnar impingement syndrome and lateral epicondylitis does not demonstrate a functional limitation. <u>Hinkle</u>, 132 F.3d at 1352 (citing <u>Yuckert</u>, 482 U.S. at 153).  Moreover, as the Commissioner argues the ALJ found Dr. Passer's opinion unpersuasive as it relates to the period before January 1, 2018 because it was inconsistent with Plaintiff's conservative treatment and physical examinations before January 1, 2018, and did not refer to objective signs or findings

supporting the limitations before January 1, 2018.  (R. 23).  As the court noted in its step two evaluation above, Plaintiff does not argue, much less demonstrate, error in this evaluation.  The court certainly has sympathy for the fact that Plaintiff's benefits would undoubtedly have been greater had the Commissioner found her disabled one day earlier, but he did not, and the record evidence supports his finding.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 29, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**